IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| DR. KEITH F. BELL,<br><br>Plaintiff,<br><br>v.<br><br>SOLON COMMUNITY SCHOOL DISTRICT,<br><br>Defendant. | Case No. 3:24-cv-00083-SMR-WPK<br><br>**PLAINTIFF'S MOTION TO DENY DEFENDANT'S ATTORNEY FEES & RECONSIDER THE ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Plaintiff pro se, Dr. Keith F. Bell, respectfully Petitions the Court to deny Defendant's attorney fees and further respectfully seeks the Court's reconsideration on the Order On The Motion to Dismiss based on the following factors:

**PETITION TO DENY DEFENDANT'S ATTORNEY FEES**

1.  Plaintiff contends that the fees requested are unreasonable & unnecessary relative to the issues involved, and the skill required.

2.  Counsel is touted as "highly experienced" in Intellectual Property Law, having "represented sophisticated Fortune 500 companies,"[1] such that performance of much of the legal tasks involved would have been second nature for Counsel and should not have required the extensive preparation and repeated review.

3.  Plaintiff additionally asserts that in Counsel's sworn "**DECLARATION**" Counsel has submitted charges to address Plaintiff's January 23, 2025 open records request (which Counsel stated was "akin to responding to discovery requests under Rule 34 of the

---

[1] https://nyemaster.com/attorney-directory/lynn-herndon/

1

Federal Rules of Civil Procedure" [DE27. ¶6]) yet the production is not commensurate with the large number of line item charges.

4. At least 20 line items with charges allegedly relating to Plaintiff's January 23, 2025 open records request were claimed in Counsel's declaration, yet in a February 11, 2025 letter Defendant provided a mere four paragraphs (Exhibit 1) and only two documents, one of which was a March 8, 2018 email from Jester Insurance Services of Des Moines warning Iowa School Districts about Copyright issues with specific mention of Plaintiff. (Exhibit 2)

5. Moreover, Defendant's scant responses included "boilerplate" objections,[2] which put Defendant at risk for sanctions. Liguria Foods, Inc. v. Griffith Labs, Inc., No. 14 Civ. 3041, 2017 WL 976626 (N.D. Ia. Mar. 14, 2017) (N.D. Iowa March 14, 2017). Moser v. Holland, No. 2:14-cv-02188-KJM-AC, 2016 WL 426670 (E.D. Cal. Feb. 3, 2016)

6. The Court has the authority to levy sanctions against attorneys that proffer generic, boilerplate responses in request for production.[3]

7. Plaintiff believes that in addition to excessive charges for Counsel's boilerplate responses, Defendant has also listed multiple charges on 1/27/25, 1/28/25 and 1/29/25 for time spent on items that Defendant knew, or should have known, were not relevant to this matter, or on items relating to issues that Counsel as a seasoned attorney should have known.

8. Plaintiff filed with the Court in good faith with the belief that a reasonable litigation position on Infringement was set forth and thus asks the Court to further consider: "… awarding attorney's fees against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." [Matthew Bender & Co. v. West Pub. Co., 240 F.3d 116 (2d Cir. 2001) ORDER TO DISMISS]

---

[2] https://casetext.com/analysis/bench-slapped-the-death-of-boilerplate-discovery-objections
[3] https://drakelawreview.org/wp-content/uploads/2015/06/irvol61-3_jarvey.pdf

9. For the reasons above, and any other the Court may see fit to apply, Plaintiff respectfully petitions that the Court deny Defendant's Attorney's fees as unreasonable and unnecessary.

**FACTORS FOR RECONSIDERATION**

10. Defendant previously settled this matter on May 31, 2018, but in spite of multiple warnings, including but not limited to: C&Ds on May 12, 2018 and on November 5, 2021; receipt of a warning from COUNSEL'S CORNER by Ahler's & Cooney, P.C., on copyright issues (expressly mentioning Plaintiff by name warning not to use Plaintiff's works [Exhibit 3]; a personal conversation; an email with Superintendent Davis Eidahl; and, aforementioned email Defendant submitted to Plaintiff [Exhibit 2], Defendant infringed again by at least retweeting, disseminating, and displaying Plaintiff's Copyrighted Intellectual Properties ("IP") for the book "Winning Isn't Normal" and the separately copyrighted passage, also titled "Winning Isn't Normal" ("WIN") in a clear breach of contract and despite this plethora of warnings knowingly & willfully left the post of Plaintiff's IP up more than 160 days.

11. None of Defendant's uses qualify for any of the exemptions for reproduction, display, or dissemination as Defendant's uses are:

- Copyright infringements
- Not parodies
- Not for scientific research
- Not for face-to-face academic use in an academic setting
- Not used during an onsite religious ceremony
- Not for criticism or commentary
- Not for news reporting
- Not for scholarship

12. Defendant had no right to give Internet Platforms the right to use any part or all of Plaintiff's rights to everyone in the world with access to the Internet at any time and in any way

and give those persons the right to do the same ad infinitum, which Defendant did per Twitter Terms of Service.[4]

- **There are Intellectual Property Licenses in these Terms:** You retain ownership and rights to any of your Content you post or share, and you provide us with a broad, royalty-free license to make your Content available to the rest of the world and to let others do the same. Conversely, we provide you a license to use the software we provide as part of the Services, such as the X mobile application, solely for the purpose of enabling you to use and enjoy the benefit of the Services.

13. Defendant, by agreeing to Twitter Terms of Service [see ¶ 12], improperly and illegally urged others to copy, disseminate, and display Plaintiff's IPs.

14. Plaintiff believes Defendant's uses cannot be fair use as Defendant's uses:

- Are non-transformative
- Are Identical or near verbatim to WIN
- Gave Plaintiff no attribution
- Were used for the same purpose as Plaintiff's
- Did not meet Plaintiff's explicitly communicated required permissions for use
- Enabled Defendant to substantially profit financially by using Plaintiff's uses without paying the prevailing price
- Are not factual. The book, "Winning Isn't Normal," and WIN are Plaintiff's opinion of what Plaintiff thinks is the best approach to outperforming the competition in sports or other areas in which success is desired [DE-1. ¶49]
- Defendant improperly and illegally urged others to copy, disseminate, and display Plaintiff's IPs
- Defendant knew or should have known they were acting in reckless disregard for the consequences of their actions

15. Defendant, in its January 19, 2022 email, valued damages at $25,000.00 "…now have the authority to offer you [Plaintiff] $25,000 to settle this claim against the Solon Community School District. We feel this is a very reasonable amount to pay you in settlement of this case." [Exhibit 4] Further, on January 26, 2023 Defendant's Counsel wrote: ". . . in the

---

[4] https://x.com/en/tos/previous/version_19 (summary of "Terms" 5th bullet point)

4

interest of resolving this matter and as a sign of good faith we are willing to honor the $25,000 offer, at this time." [Exhibit 5]

16. If Plaintiff were awarded any amount at all, Plaintiff would be the prevailing party and Defendant would not be entitled to attorney fees. Therefore, Defendant's claims for attorney fees are inappropriate.

17. It should be noted that the Defendant's claims were largely based on the Eagle Mountain Saginaw Case No. 4:20-cv-091157 which was in turn largely based on the OCCP/Oakland Undercurrents case, which was largely based on the Daniel Werner's falsified expert testimony claiming that Plaintiff's IPs were for a sociology book when in fact Plaintiff's IPs were for a sports psychology book; and, more importantly, that the damage amounts were based on the Copyright Clearance Center's ("CCC") rates. In fact, the CCC does not, and cannot, represent anyone without the copyright owner's request to do so and without the copyright owner's setting a price: neither of which Plaintiff did.

18. Plaintiff filed this suit with information and a sincere belief that Plaintiff was acting in good faith to protect Plaintiff's copyrighted works; to uphold the copyright act; and to assist other creators in protecting their copyrighted works.

19. Plaintiff had previously settled a case in Florida against a Miami Dolphin's coach, Gerald Alexander which was based on the coach's inclusion of a passage from Plaintiff's 1982 book, *Winning Isn't Normal,* and WIN. In that case, The Florida federal court judge ruled that consideration of the fair use defense on a motion to dismiss was not appropriate unless it's clear, based on the complaint itself, that fair use is applicable. There was a much different result in a lawsuit brought against the University of Mississippi football coach, Lane Kiffin. Civil Action No: 3:24-cv-231-MPM-RP

20.     It remains confusing to Plaintiff how different Courts can come to different conclusions based on essentially similar facts.

21.     Kiffin tweeted the passage, the same passage that Alexander had tweeted. However, Kiffin included no other commentary or elaborate on the passage, while Alexander had.  Further, please remember that this case is a post-Warhol Fair use case.

22.     Both the Fifth Circuit in the Eagle Mountain case and the Kiffin Court, make no mention of the Supreme Court's analysis in Warhol. Kiffin shared the post for motivational and inspirational purposes: the same purposes as Plaintiff's.  Plaintiff doesn't believe said use doesn't make the duplication, distribution, or display okay.

23.     Plaintiff believes that especially with regard to Plaintiff's clearly specified permissions for use, this Court shouldn't negate its protectability. And when others use Plaintiff's whole work it should result in a finding of infringement. A finding of fair use does not comport with the post-Warhol Copyright Act and would be misguided.

24.     Furthermore, in Kevin Madigan's February 29, 2024 article: "**Fair Use in a Post-Warhol World: Part II / The Misappropriation Art Cases**"[5] He states the following, which is excerpted with his permission**:**

> "One of the most noteworthy post-*Warhol* developments in fair use jurisprudence came in early 2024 when the notorious appropriation artist, Richard Prince, abruptly agreed to judgments against him in two cases in which he had earlier claimed his unauthorized use of the plaintiff photographers' works was (among other things) transformative. If you're not familiar with Richard Prince, suffice it to say that he's made a career out of appropriating the work of others and often successfully invoking fair use defenses when sued." [Excerpted with permission]
>
> In *Graham v. Prince*, photographer Donald Graham sued Prince in 2015 over the unauthorized use of Graham's photograph, *Rastafarian Smoking a Joint*, in a portrait that was featured in a catalog, compilation work, and billboard. In *McNatt v. Prince*, photographer Eric McNatt sued Prince in 2016 over the unauthorized use of McNatt's photograph in a portrait that was featured in an exhibition and a book. The district court, which noted the then-pending Supreme Court case, held in favor of the photographers in both cases in May 2023, denying Prince's and co-defendant art galleries' motions for summary judgment and finding that the fair use exception did not excuse the infringement.

---

[5] https://copyrightalliance.org/fair-use-post-warhol-world-part-ii/

While that order likely gave Prince and his attorneys pause, the *Warhol* opinion was handed down just one week later and sent shockwaves through the copyright world. Whatever hope Prince may have had for a decision that would help his case was clearly lost, and the once-reliable but misguided transformative fair use strategy that he and others relied on in the past was now highly tenuous.

Then, on January 25, 2024, on the eve of the *Graham* trial, the district court for the Southern District of New York issued final judgments against Prince in both the *Graham* and *McNatt* cases. As part of the judgment, Prince was held liable for willful infringement of the photographs and relinquished all defenses, including the fair use defense. This was a remarkable and significant departure from Prince's history of fighting and prevailing in copyright infringement lawsuits on the basis of fair use, marking a new era in fair use jurisprudence in the wake of *Warhol*. In both Graham and McNatt, Prince was liable for damages in an amount equal to five times the respective retail prices of the infringing portraits in addition to other costs incurred by the plaintiffs. No doubt the *Warhol* decision influenced Prince to forego a fair use defense, and the outcome of the cases provide insights into how *Warhol* will impact future copyright cases involving fair use.

## **PRAYER**

Plaintiff, Dr. Keith Bell, respectfully requests this Court to deny Defendant any and all attorney fees; reconsider its Feb 11, 2025 Order granting Defendant's Motion to Dismiss in the Solon Community School District Case No. 3:24-cv-00083-SMR-WPK Order; vacate said Order; Award at least $25,000.00 in damages to Plaintiff; sanction Defendant for its use of boilerplate responses; and provide Plaintiff with any other relief the Court finds reasonable and just.

Date: March 11, 2024              Respectfully submitted,

Dr. Keith F. Bell, Pro se
3101 Mistyglen Circle
Austin, Texas 78746
512-327-2260 | drkeithbell@gmail.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 11, 2025 this document was served through CM/ECF for delivery, which automatically e-mails a copy to Defendant's Counsel of record.